No. 49,526

STATE OF KANSAS, *Appellee,* v. RALPH M. McBARRON, *Appellant.*

(585 P.2d 1041)

Opinion filed October 28, 1978.

*William D. Mize,* district public defender, argued the cause and was on the brief for the appellant.

*William Rex Lorson,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant, Ralph M. McBarron, was convicted of burglary (K.S.A. 21-3715) and theft (K.S.A. 21-3701). The prosecution arose out of a burglary at the VFW Club building in Salina on December 7, 1975. Entry to the building was gained by use of a rope removed from the flagpole. The rope was attached to the frame of a skylight. The burglar lowered himself through the skylight and then through a false ceiling into the club's bar. The only issue at the trial of the case was the identity of the defendant, McBarron, as one of the participants in the crime.

Difficulties arose in this case because an overly zealous Salina police officer first made an illegal arrest of the defendant and his companion, Wayne Morse, and some time later proceeded to make an illegal entry into the defendant's motel room. As a result of the police officer's misconduct, the trial court, after a hearing on the defendant's motion, suppressed the statements of the defendant, McBarron, and his companion. The court suppressed all of the physical evidence of the crime which was found in their

motel room. Because of the suppression of such evidence, the prosecution was seriously crippled in the presentation of its case.

The facts in this case were not greatly in dispute and were essentially as follows: McBarron, Wayne Morse, and Victor Herrera were all members of the Army stationed at Fort Riley. The three companions arrived in Salina on December 6, 1975. During the evening, Herrera checked into the Flamingo motel. At about 3:00 a.m. on the morning of December 7, the three men left the motel in Herrera's automobile and drove around Salina. At about 4:00 a.m. Herrera dropped off Morse and McBarron at a point near the VFW building, about one-half block from the bus depot. The bus depot was the only building open in the downtown area at the time. In attempting to find his way back to the motel, Herrera became lost. At 4:30 a.m., Salina police officer Kenny Brown observed Herrera driving slowly up and down the street near the VFW building. It appeared to officer Brown that Herrera was looking around for something or somebody. The officer then stopped Herrera and asked him for his name and where he was going. Herrera gave his name to officer Brown and advised him that he was looking for a motel room. Officer Brown then requested officer Lane to help Herrera find a motel room. Lane directed Herrera to Ninth Street and gave him the name of two motels, including the Flamingo motel.

At 7:00 a.m. on the morning of December 7, officers Smith and Lane observed two pedestrians walking in the 200 block of North Santa Fe, a main street in the business district of Salina, not far from the VFW building. Officer Smith testified that the two pedestrians were not acting in any suspicious manner and that they appeared to be very young. Apparently the police had been informed of two young students who were AWOL from a military school in Salina. The officers decided to stop the subjects. The two pedestrians, McBarron and Morse, produced military ID cards. The two men advised the police officers that they were staying at a local motel with a friend and were looking for a place to get breakfast. The police officers, without probable cause, arrested McBarron and Morse and took them to the police station. They were released after a short time when a check with Fort Riley showed them not to be absent from their post without leave.

At about 8:00 a.m. officer Smith learned that a patrol car had been sent to the VFW building to investigate a burglary. Smith

was advised over the radio that when Morse and McBarron were being transported to the police station by officer Lane, they had called officer Lane's attention to a white two-door Ford with an out-of-state license tag which they said was being driven by a friend. They mentioned that they were staying in the motel room with their friend. On receipt of that information, officer Smith proceeded to the Flamingo motel, obtained the key to the defendants' room, and forcibly entered the motel room without invitation, consent, or warrant and in an abusive and illegal manner. Upon entering the room officer Smith placed Morse, Herrera, and McBarron under arrest. Statements were obtained from the three men and there was a subsequent search of the car and motel room. Thereafter Morse, McBarron, and Herrera were charged with burglary and theft.

The defendants filed motions to suppress the evidence seized and certain statements taken from the defendants by the police officers. The motions to suppress were consolidated and heard in a single hearing. After hearing all of the testimony, the trial court found that the initial arrest of McBarron and Morse and their interrogation and detention at the police station were unlawful. The trial court also found from the evidence that the officers had entered the motel room at the Flamingo without a search warrant and that the arrest of the defendants and search of the room were unlawful. The trial court sustained the motions of all three defendants and suppressed their statements along with the physical evidence seized by the officers. The state then proceeded to try Morse alone. He was acquitted by the jury. Faced with the possibility that the jury would reach the same verdict on a trial of defendant McBarron, the state granted immunity to Victor Herrera and compelled him to testify at the trial of the defendant McBarron. With the testimony of Herrera, plus an incriminating statement made by McBarron to another inmate in the Saline county jail and evidence of a prior conviction of McBarron for burglary in California, McBarron was convicted of burglary and theft. He appeals from that conviction, claiming trial errors.

The first point raised by the defendant McBarron on the appeal is that the trial court erred in admitting into evidence the prior conviction of McBarron for the offense of burglary in California committed about twenty months prior to the burglary of the VFW in Salina. This prior conviction was admitted pursuant to K.S.A.

60-455 to prove plan and identity. The prosecutor in his brief concedes that the state could not properly offer the previous conviction to prove plan. We agree. In *State v. Gourley*, 224 Kan. 167, 578 P.2d 713 (1978), it was held that where a similar offense is offered under K.S.A. 60-455 for the purpose of proving plan, it should be admitted for that purpose only where the evidence shows some causal connection between the two offenses, so that proof of the prior offense could be said to evidence a preexisting design, plan, or scheme directed toward the doing of the offense charged. To the same effect is *State v. Marquez*, 222 Kan. 441, 565 P.2d 245 (1977). In this case the burglary by the defendant McBarron in California twenty months prior to the VFW burglary was completely unrelated to the crime for which the defendant was charged in this case. Evidence of the California conviction was clearly not admissible to prove plan.

The California conviction was admissible, however, for the purpose of proving identity. Where a similar offense is offered under K.S.A. 60-455 for the purpose of proving identity, the evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the defendant committed both of the offenses. *State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974). The defendant contends that the prior California burglary was not sufficiently similar in its factual circumstances to the VFW burglary in Salina to raise the necessary inference. The state maintains that the similarities were sufficient. In this regard, we note that both of the burglaries involved the same peculiar method of entry into the building by means of a rope through a roof opening. Here both burglaries involved a business rather than a residence; both involved thefts of money and the attempted entry of a safe; and, in each instance, the burglar exited through a door which was left unlocked. Under all the circumstances, we have concluded that the factual circumstances were sufficiently similar to raise a reasonable inference that the same person committed both of the offenses. It was error for the trial court to admit evidence of the California burglary to prove plan. We find, however, that under the standards of K.S.A. 60-261, the admission of the other crimes evidence to show plan did not prejudice the substantial rights of the defendant since the evidence was properly admitted on the issue of identity. *State v. Marquez*, 222 Kan. 441.

.

The second point raised on the appeal is that the trial court erred in refusing to suppress the testimony of Victor Herrera because the identity of that witness was made known to the police as the result of defendant McBarron's illegal arrest. In support of his position, the defendant relies upon the "fruit of the poisonous tree doctrine." The fruit of the poisonous tree doctrine is one facet of the exclusionary rule of evidence, which bars the admissibility in a criminal prosecution of evidence obtained in the course of unlawful searches and seizures. In that context, the fruit of the poisonous tree doctrine is held to extend the scope of the exclusionary rule to bar not only evidence directly seized but also evidence indirectly obtained as a result of information learned or leads obtained in the unlawful search. When applicable, the fruit of the poisonous tree doctrine bars not only derivative physical evidence, but also derivative testimonial evidence, such as confessions and admissions obtained as a result of confronting the accused with information learned in an unlawful search, and the testimony of witnesses discovered as a result of an unlawful search. *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407 (1963); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 64 L.Ed. 319, 40 S.Ct. 182 (1920); *Nardone v. United States,* 308 U.S. 338, 84 L.Ed. 307, 60 S.Ct. 266 (1939). The doctrine of the fruit of the poisonous tree was considered in *State v. Deffenbaugh,* 216 Kan. 593, 533 P.2d 1328 (1975) and in *State v. Childers,* 222 Kan. 32, 563 P.2d 999 (1977).

In *Childers* we held that the doctrine is inapplicable where the police learn of the evidence from an independent source or where the connection between the unlawful conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint. 222 Kan. at 32, Syl. ¶ 7. Whether or not specific evidence is the inadmissible yield of an unlawful search or is admissible because knowledge of its availability was obtained from an independent source is a question of fact to be determined in each case where the issue is raised.

The evidence in this case is undisputed that, at approximately 4:30 a.m. on December 7, officer Brown observed Victor Herrera driving his automobile at a slow rate of speed in the vicinity of the VFW building. The officer stopped him, obtained his name, and told officer Lane to assist him in finding a motel room. The illegal arrest of defendant McBarron and his companion Morse

by officer Smith occurred at 7:30 a.m. on December 7, approximately three hours after the name of Victor Herrera became known to the police. It is clear to us that, upon his being notified of the burglary of the VFW, officer Brown's attention would have focused immediately upon Victor Herrera, the subject who had been seen driving in the early morning hours in the vicinity of the VFW Club. Officer Brown would immediately have contacted officer Lane, who at Brown's suggestion had given Herrera the name of the Flamingo motel. Officer Brown would have proceeded to the motel and would have learned that Herrera had actually checked into the Flamingo motel many hours before he was stopped by officer Brown. In our judgment the trial court correctly overruled the motion of the defendant to suppress the testimony of Victor Herrera. The evidence of Victor Herrera, as a prime suspect and witness in the VFW burglary, was obtained from an independent source, separate and apart from the illegal arrest and unlawful search of the defendant McBarron and his companion, Morse. Hence, we hold that the fruit of the poisonous tree doctrine did not bar Herrera's testimony in this case.

The last point raised by the defendant on the appeal is that the state's evidence was not sufficient to support a verdict of guilty in this case. Although the evidence presented by the state was circumstantial, it has long been recognized that circumstantial evidence may support a verdict of guilty of even the most severe offense. *State v. Ritson,* 215 Kan. 742, 529 P.2d 90 (1974). The test of the sufficiency of the evidence to sustain a verdict of guilty when questioned on appeal is not whether guilt has been established beyond a reasonable doubt but whether the evidence, viewed in the light most favorable to the state, forms a basis for a reasonable inference of guilt. *State v. Rincones,* 209 Kan. 176, 495 P.2d 1019 (1972); *State v. Johnson,* 222 Kan. 465, 565 P.2d 993 (1977). Here the evidence showed that defendant McBarron and Morse were dropped off by Herrera in the early morning hours on a dark street behind the VFW building in an area where there were no open businesses. Furthermore, Herrera was observed driving his automobile at a slow speed looking carefully around the area of the VFW building and then returning to the alley behind the club. These circumstances could reasonably lead one to the conclusion that Herrera was driving the getaway car and that he was there to pick up his two companions. There was, of

course, ample evidence of a burglary and theft of the VFW building some time in the early morning hours on December 7. In addition to this, evidence was presented of an admission made by defendant to James Fulton that he, McBarron, was the one who committed the crime at the VFW. These facts, when considered in the light most favorable to the state, in our judgment provided a basis for a reasonable inference of guilt sufficient to sustain the verdict of guilty.

The judgment of the district court is affirmed.